E. S. TESDELL, Appellant, v. DES MOINES CITY RAILWAY COMPANY, Appellee.

**RAILROADS:** Accidents at Crossings—Negligence. Evidence reviewed, and held to show negligence *per se* on the part of the driver of an automobile in driving into a street intersection ahead of a street car.

*Appeal from Des Moines Municipal Court.*—J. E. MERSHON, Judge.

MARCH 11, 1924.

ACTION at law for damages to plaintiff's automobile, as a result of a collision with defendant's street car at a street intersection. The defense was a general denial. At the close of plaintiff's evidence, the trial court directed a verdict. From such order, the plaintiff appeals.—*Affirmed.*

*E. S. Tesdell, F. H. Mackaman,* and *J. F. Smith,* for appellant.

*W. H. McHenry* and *Corwin R. Bennett,* for appellee.

EVANS, J.—The allegations of negligence may be reduced to the general charge that defendant's motorman failed to warn the plaintiff, and failed to keep a lookout. The accident occurred at 6 P. M. of September 12, 1922, at the intersection of West Thirteenth Street and Grand Avenue in Des Moines. The plaintiff was driving north in his automobile on Thirteenth Street. The defendant's car was moving westward on Grand Avenue. Plaintiff testified that, as he entered the intersection, he was driving from 10 to 15 miles an hour, and that he slowed down to 10 miles an hour; that he saw the street car east of the inter-

section, "just coming to a standstill," that it was "either un-loading or loading;" that he proceeded into the intersection without stopping, intending to cross the track and drive west on Grand Avenue; that, after entering the intersection, he gave no attention to the street car, and that he did not observe it at all until he came up to the south rail of the track; that, at that point, he discovered that the car was within 3 or 4 feet of him; that it was moving "very slowly," and about as fast as a "man would walk;" that, at the time of the contact, the plaintiff's car was headed slightly northwest; that the left corner of the car caught the right corner of the automobile, and carried it forward toward the west. As one of the witnesses described it: "The automobile hung on the left front corner of the street car." After this contact, the street car moved a distance of from 15 to 20 feet, to the west side of the intersection, dragging the automobile with it. Such was the method of the collision as described by the plaintiff. Plaintiff's evidence also shows that the motorman did not see the plaintiff, and was not looking in his direction, but was looking, while crossing the intersec-tion, either forward or to his right. The plaintiff alleged that the street car entered the intersection after he did; and such is the inference he claims in argument, though there is no direct evidence as to which entered the intersection first. In view of the fact that the automobile was carried or dragged for a distance of 15 or 20 feet, and that this brought it up to the west side of the intersection, and alongside of the east-bound car, which had stopped for the intersection, the first contact must have occurred at the approximate center of the intersection and somewhat west thereof. Considering that the automobile was moving at 10 miles an hour, and that the street car was moving very slowly, and at a "walking" rate, it is idle to say that the street car entered the intersection after the plaintiff did. Of physical necessity, the street car must have been on the inter-section and very close to the point of collision when the plaintiff entered the intersection. Otherwise, their relative rates of speed could not have brought them into collision at that point. The plaintiff concedes that, after entering the intersection, he was looking westward, observing an east-bound car, which was a half a block away. If he had looked in front of him, he must have

seen the street car. It necessarily follows that, when the street car entered the intersection, its track was clear. Its slow speed indicated that it was moving cautiously. If, upon any hypothesis, it could be said that the motorman was negligent in failing to discover and to observe the plaintiff, how could we differentiate the equal duty of plaintiff to discover the street car in front of him? It did not overtake him. It did not rush upon him with sudden or unexpected speed. The conclusion is unavoidable that, upon the facts disclosed by the plaintiff's evidence, he was guilty of negligence, as a matter of law. That being so, it is needless to determine whether the motorman was also guilty of negligence. There is some claim in argument that the defendant was liable under the doctrine of "last clear chance," because the motorman failed to stop immediately after the collision. The doctrine is without application to the case made. The testimony of the plaintiff was that the motorman did stop as soon as he saw what had happened, although he did not see the collision at the moment it occurred.

Complaint is made also that the motorman negligently backed his car in such a way as to cause further damage to the automobile. When the stop was made, the automobile was leaning against the side of the car. The backing of the car scratched the sides of the automobile and stripped the running board. It was legally possible for the defendant to render itself liable for this injury if it was negligent in the respect claimed, but the plaintiff offered no evidence of the extent or measure of this damage. He proved his damages in lump, by showing the value of his car before the collision and the value thereof after it. No evidence is offered whereby a jury could fix the amount of damages sustained by the alleged imprudent backing of the car. If the plaintiff had established the liability of the defendant for the collision in its inception, then it would have been entitled to recover the entire damage, whether it resulted from the original collision or from the subsequent backing. But the plaintiff was not entitled to go to the jury on the question of negligent backing of the car without some evidence of the measure of the damage inflicted upon him thereby. The judgment of the trial court is, accordingly, affirmed.—*Affirmed.*

Arthur, C. J., Preston and Faville, JJ., concur.